IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAMIEN GREEN,
                Plaintiff,

v.                                                   OPINION AND ORDER

JONI SHANNON-SHARPE,                                     11-cv-816-slc
                Defendant.

---

In this prisoner civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff Damien Green is proceeding on his claim that defendant Joni Shannon-Sharpe, a Crisis Intervention Worker at the Wisconsin Secure Program Facility, ignored his request for mental health treatment on September 9, 2010, in violation of his rights under the Eighth Amendment. Before the court is defendant's motion for summary judgment, dkt. 33. I am granting defendant's motion because Green has failed to present any admissible evidence showing that he had a serious medical need or that Shannon-Sharpe was deliberately indifferent to it.

Before setting out the facts, the court needs to talk about Green's submissions. On March 19, 2013, the court reviewed Green's submissions in opposition to the motion for summary judgment. Although Green had filed his own proposed findings of fact, I noted that he had not filed a response to defendant's proposed findings of fact, as was required by the court's *Procedure to be Followed on Motions for Summary Judgment*. Even so, I chose to give Green and extension until April 1, 2013 to file that response, and I warned him that if he failed to do so, "then this court will deem the facts proposed by defendant to be undisputed and shall decide the motion for summary judgment on that basis." Dkt. 48. Green failed to meet his deadline.[1]

---

[1] Instead of filing his response to defendant's proposed findings of fact, on April 1, 2013 Green filed his third request for an extension of time. The court, having previously granted plaintiff two deadline extensions (dkts. 38 and 46), declined to grant him a third (dkt. 50).

Given the court's clear warning to Green about what would happen if he failed to follow the court's instructions, it would be appropriate for this court simply to adopt defendant's proposed findings of fact without considering Green's own proposed findings. Even though Green is proceeding pro se, that status does not allow him to ignore the court's procedural rules and deadlines, particularly when those rules and deadlines have been explained clearly to him. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("pro se litigants are not entitled to a general dispensation from the rules of procedure"). All this being so, the outcome is the same whether the court takes a hard line or is lenient: even if I consider Green's submissions, they do not change the result because they fail to create a triable issue of fact.

Green has submitted two declarations, one from inmate Deron Love, dkt. 43, and one from inmate Charles Star, dkt. 42. Love's statement is not admissible because it is neither a sworn affidavit nor signed "under penalty of perjury" as required by 28 U.S.C. § 1746. *See Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (stating that 28 U.S.C. § 1746 permits an unsworn declaration to substitute for an affidavit only if executed "under penalty of perjury"). Star's statement, which is signed under penalty of perjury, is admissible, but it does not give rise to any genuine issues of fact. I will address Star's statement, in the analysis below.

Against this backdrop, I find the following facts to be undisputed for the purpose of deciding the instant motion:

## FACTS

At the times relevant to this lawsuit, plaintiff Damien Green was a prisoner in the segregation unit at the Wisconsin Secure Program Facility in Boscobel, Wisconsin (WSPF).

Green has asthma and is prescribed an inhaler. Defendant Shannon Sharpe was, and still is, a Crisis Intervention Worker at WSPF, where she is a member of the Psychological Services Unit ("PSU").

As a Crisis Intervention Worker, Sharpe's duties include program planning to identify, prevent, and manage sources of inmate stress that may lead to crisis situations at WSPF; providing direct services to inmates regarding crisis management and prevention; and consulting with and training other staff members in PSU and at WSPF. On any given day at WSPF, Sharpe is the only Crisis Intervention Worker on duty. Shannon works with other psychological services staff members, such as psychologists, with correctional officers, and occasionally with medical personnel, as warranted by a particular situation.

At approximately 9:40 a.m. on September 9, 2010, Green banged on the cell wall shared with Charles Star, the inmate housed in the adjoining cell. Communicating through the air vent, Green told Star that he was having panic attacks and psychological distress with shortness of breath. Green needed Star call for help because Green didn't have any puffs left in his inhaler and the sergeant wouldn't answer his intercom. Star used his intercom to call security; a sergeant responded and said "okay" after Star notified him of the problem. After waiting about 10 minutes with no further response from security and hearing nothing from Green's side of the cell wall, Star pressed the emergency call button again and hollered in the vent for other inmates to press their call buttons and get someone "for the guy in cell A-317, because he was having a psychological and medical emergency."

At the same time, Shannon-Sharpe was in the segregation unit dealing directly with an inmate who had tied a sheet to his neck and was threatening to hurt himself. Shannon-Sharpe

3

deemed this situation to be a life-threatening mental health emergency. While dealing with this inmate, Shannon-Sharpe heard a different inmate in the segregation unit shout that "someone" in "some cell" needed to be seen by Psychological Services Unit staff. The shouting inmate did not say which inmate needed help or what his problem was.

Weighing this vague report against the inmate in front of her who had tied a sheet to his neck and was threatening to hurt himself, Shannon-Sharpe determined that she could not walk away from the life-threatening situation. Shannon-Sharpe shouted back to the shouting inmate that he should tell the inmate who wanted help to use his intercom button to call security.[2] After she had ensured the safety of the inmate with the emergency, Shannon-Sharpe returned to her office. She did not receive any other requests that morning from security staff to attend to any issues involving Green.

That same afternoon, Shannon-Sharpe was informed by security staff that Green was claiming to be in a crisis and was asking to be seen by PSU staff. Shannon-Sharpe met with Green at his cell front. Green was agitated. He accused Shannon-Sharpe of ignoring him earlier in the day and "leaving him to die." When Green said this, Shannon-Sharpe realized for the first time that Green had been the inmate seeking assistance that morning when she had been attending to inmate with a sheet around his neck. Green told Shannon-Sharpe that he had been having an asthma attack earlier that day. At the conclusion of this meeting, Green denied any

---

[2] In his declaration, inmate Star avers that he heard Shannon-Sharpe say, "I don't care about him right now, I'm dealing with another inmate." Even if these were the words that Shannon-Sharpe used, this does not establish that Shannon-Sharpe knew the identity of the other inmate requesting assistance or knew the nature or seriousness of his problem,.

suicidal ideation. Green did not report any other mental health concerns aside from having anxiety and wanting to see the psychologist.

In late 2010, Green filed a 27-page federal lawsuit alleging wrongdoing by many state prison officials at many different institutions, including his allegations against Shannon-Sharpe relating to the events of September 9, 2010. *See* Case No. 10-cv-745. This court severed and then dismissed the complaint against Shannon-Sharpe for failure to state a claim, but allowed Green to amend. *See* dkts. 1 and 3 in the instant case. In his amended, unverified complaint, Green alleged that on September 9, 2010, he was having a panic attack, "psychological distress" and difficulty breathing; he informed the inmate next door about his symptoms and asked him to call for help; the inmate did so; eventually someone told Shannon-Sharpe that Green needed help because he was having a panic attack and trouble breathing; Shannon-Sharpe responded that she did not care about Green because she was dealing with a different inmate who was threatening to kill himself. Green also alleged that at some point, the officer on duty and a nurse came to plaintiff's cell and gave him albuterol (a medication that opens the airways.) This court concluded that Green's new allegations were sufficient to state a claim, and granted him leave to proceed *in forma pauperis*. Dkt. 10.

OPINION

I.  **Summary Judgment Standard**

Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine

5

issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material facts exists, the court must construe all facts in favor of the nonmoving party. *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007). Even so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, he must come forward with enough admissible evidence on each of the elements of his claim to show that a reasonable jury could find in his favor. *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Although a non-moving party's affidavit can constitute affirmative evidence to defeat a summary judgment motion, conclusory allegations, unsupported by specific facts, will not suffice to meet this burden. *Payne v. Pauley*, 337 F3.3d 767, 773-74 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**II. Eighth Amendment**

An employee in a prison violates the Eighth Amendment's proscription against cruel and unusual punishment if she is deliberately indifferent to a prisoner's serious illness or injury. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To survive Shannon-Sharpe's motion for summary judgment, Green must present evidence that would support the conclusion that Green had an "objectively serious medical need" of which Shannon-Sharpe was aware, and that she

was "deliberately indifferent" to this serious medical need. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

A medical need may be serious if it is a condition that (1) is life-threatening or carries risk of permanent serious impairment if left untreated, (2) is one in which the deliberately indifferent withholding of medical care results in needless pain and suffering, or (3) has been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997). To establish that Shannon-Sharpe was deliberately indifferent to this need, Green must present evidence supporting an inference that she was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that she also drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Stated another way, "the defendant must have committed an act so dangerous that [her] knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

Even drawing all inferences in Green's favor, there is no evidence in the record that would allow a jury to find either of these propositions to be true. First although Green mentions in his brief that he was suffering from an asthma attack and made allegations in his complaint about an inability to breathe, I do not understand the asthma attack to be what he is claiming Shannon-Sharpe deliberately ignored. After all, Green has not disputed that Shannon-Sharpe is a mental health professional, not a medical professional, and he presents no evidence to show that Shannon-Sharpe was qualified or authorized to treat his asthma. Further, Green has not proposed any facts or offered any testimony or other evidence to show that his asthma symptoms on September 9, 2010 were so severe as to implicate the Eighth Amendment. *See*

*Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005) (whether asthma is a serious medical condition depends on its degree); *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001) (same). Instead, Green argues that Shannon-Sharpe ignored his mental condition that day.

However, as with his asthma, Green has not submitted an affidavit or declaration even explaining what symptoms or mental problems he was having on September 9, 2010, let alone showing that those symptoms rose to the level of a serious medical need. Neither Green's complaint, which is unverified, nor Green's unsupported statements in his brief provide the necessary evidentiary support. *Cf. Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996) (reversing summary judgment for defendant where plaintiff had relied on a verified complaint as evidentiary support; a verified complaint "converted the complaint . . . into an affidavit"); *United States v. Stevens*, 500 F.3d 625, 629 (7th Cir. 2007) (statements in a brief are not evidence). The only "evidence" pertaining to Green's psychological symptoms is Star's declaration, in which he avers that Green told him that he was having "panic attacks and psychological distress with shortness of breath." Even assuming that this second-hand evidence is admissible under the "then-existing physical condition" exception to the hearsay rule, *see* Fed. R. Evid. 803(3), it is far too vague to establish that Green was at risk of serious harm from these symptoms unless he received treatment for them.

Finally, even if this court was to overlook Green's failure to submit an affidavit or declaration and accept statements in his brief regarding his mental condition, he still cannot show a serious medical need. Green describes his serious medical need as follows:

> Plaintiff was experiencing anxiety attacks, as well as suffering from an asthmatic attack locked within an enclosure where he was encountering mental stress and auditory hallucination and *although*

8

>*he denied any self harm,* he was left in a situation where he could have died, and or committed suicide.
>
>Plt.'s Br. in Opp., dkt. 47, at 6-7 (emphasis added).

Green's self-serving and conclusory statement that he was at risk of committing suicide on September 9, 2010, is not supported by a scintilla of evidence. Green does not even aver that he was contemplating suicide or self-harm, much less cite to records that would corroborate such an averment. To the contrary, he admits that "he denied any self harm." *Id*. at 7. His contention now that he was in so much distress that he "could easily" have killed himself is hyperbolic conjecture. *Cf. Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690-91 (7th Cir. 2010) (party opposing summary judgment cannot rely on unsupported ipse dixit that is flatly refuted by the hard evidence offered by its opponent); *Payne v. Pauley*, 337 F.3.3d 767, 773-74 (7th Cir. 2003)(although non-moving party's affidavit can constitute affirmative evidence to defeat a summary judgment motion, conclusory allegations, unsupported by specific facts, will not suffice to meet this burden.) A "metaphysical doubt" about the facts is not enough to defeat a motion for summary judgment. *Matsushita.*, 475 U.S. at 586.

As for his allegations of "mental stress" and anxiety, Green does not suggest what Shannon-Sharpe could or should have done to alleviate those symptoms at the time, or why an immediate visit from a mental health professional was necessary. Moreover, it is undisputed that Shannon-Sharpe spoke with Green later that same day. Green presents no evidence or argument suggesting that Shannon-Sharpe failed during this same-day visit to provide him with the treatment that he requested, or that the half-day delay in treatment in some fashion harmed him or otherwise exacerbated his condition. "An inmate who complains that delay in medical

treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (citing *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995)). In the absence of any verifying medical evidence showing that Green suffered from a medical condition that worsened because of Shannon-Sharpe's failure to respond immediately, Green's Eighth Amendment claim cannot succeed.

Although the analysis could end there, for the sake of completeness I note that even if Green could establish that he actually had a serious medical need that morning, he cannot establish that Shannon-Sharpe was deliberately indifferent to it. This is because he has no admissible evidence to show that Shannon-Sharpe was aware of facts supporting an inference that Green was at risk of substantial harm and that she actually drew that inference. Notably, Green has presented no admissible evidence to refute Shannon-Sharpe's testimony that she was busy addressing another inmate who was threatening self-harm and that all she knew about Green's situation was that "some" inmate on the unit was having some type of undefined issue. (Although Star avers that he told inmate Nathan McDaniel to tell Shannon-Sharpe that the inmate in cell A-317 was having a medical and psychological emergency, Star does not aver that he heard McDaniel say this to Shannon-Sharpe, nor does Green present facts to show that Shannon-Sharpe knew that Green was housed in cell A-317.)

No reasonable jury could conclude from the vague shouts of other inmates that Shannon-Sharpe should have known not only that Green was at risk of severe distress, but also that he

10

was more at risk of serious harm than the inmate with whom Shannon-Sharpe was interacting.[3] The undisputed facts show that Shannon-Sharpe exercised her professional judgment and decided to remain with the inmate threatening self-harm and to direct the other then-unidentified inmate (later learned to be Green) to call security if he was having an emergency. This is not deliberate indifference. *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254 (7th Cir. 1996)("[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment."); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (bar for establishing deliberate indifference so high that "[m]ere negligence or even gross negligence does not constitute deliberate indifference."). This citations are not meant to imply that the court thinks that Shannon-Sharpe did anything wrong at all; to the contrary, the evidence suggests that she handled the various situations confronting her that morning

---

[3] Green attempts to create a genuine dispute on this issue by submitting a statement from Deron Love, who asserts that he was the inmate with the sheet wrapped around his neck who Shannon-Sharpe was trying to persuade not to choke himself. Dkt. 43. According to Love, he told Shannon-Sharpe (as well as two other prison officials who were also at his cell front) that he was not going to kill himself and that Shannon-Sharpe should go attend to Green's panic and asthma attack instead.

As noted in the beginning of this opinion, Love's statement is not admissible because he did not swear to it or sign it under penalty of perjury. In any case, Shannon-Sharpe was not required to believe Love or to defer to his assessment of which inmate's needs were more important, particularly when Love has not denied that he had tied a sheet around his own neck. Along these lines, Love has attached to his statement an inmate complaint dated September 7, 2010 in which he complains that the prison officials didn't care if he tried to kill himself; the officers concluded that he was never in any danger of hanging himself. As the State observes in its reply brief, a complaint filed by Love on September 7, 2010 could not refer to his interaction with Shannon-Sharpe on September 9, 2010; therefore, Love was a hanging-threat repeater who was palpably miffed that his previous self-harm gestures had not been taken seriously enough.

professionally and correctly. But even if there is room to quibble, any mistakes that Shannon-Sharpe might have made in her triage decisions do not come close to deliberate indifference. She did not violate Green's Eighth Amendment rights.

ORDER

IT IS ORDERED THAT the motion of defendant Joni Shannon-Sharpe for summary judgment, dkt. 33, is GRANTED. The clerk of court shall enter judgment for defendant and close this case.

Entered this 13th day of September, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge